**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **RICKY GRAHAM, SULEANER SIPP,** | ) | |
| **JERMAINE SIPP & ANTHONY SIPP,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **No.  08 C 889** |
| **JOHN P. DOLAN, CRAIG A.** | ) | |
| **DUNDERDALE, KEITH E.** | ) | **Judge Ronald A. Guzmán** |
| **KARCZEWSKI, VERNON** | ) | |
| **MITCHELL JR., SCOTT M. WOLFF,** | ) | |
| **MATTHEW P. CLINE, DANIEL J.** | ) | |
| **DELOPEZ, EDDIE M. YOSHIMURA,** | ) | |
| **JOSEPH GORMAN, and CITY OF** | ) | |
| **CHICAGO,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Ricky Graham ("Graham"), Suleaner Sipp ("Suleaner"), Jermaine Sipp ("Jermaine") and Anthony Sipp ("Anthony") filed this civil rights action stemming from the execution of a search warrant at a building located at 1136 N. Monticello, Chicago, Illinois ("subject property"). A jury trial commenced on April 13, 2011 and the jury returned a unanimous verdict in favor of the defendants.  Plaintiffs now move for judgment as a matter of law in their favor. Alternatively, plaintiffs seek a new trial.  For the reasons explained below, plaintiffs' motion is denied in its entirety.

At trial, the parties presented starkly divergent factual scenarios regarding the plaintiffs' allegations.  The trial boiled down to a question of credibility.  Plaintiffs accused defendants of

entering into the second floor apartment in large numbers and detaining and searching several persons as well as thoroughly searching the entire apartment and damaging many of the plaintiffs' possessions. Defendants, on the other hand, all testified that only two officers entered the second floor apartment in hot pursuit of Anthony. Those two officers only conducted a cursory search to insure their safety while the remaining officers searched the first floor apartment. Ultimately, the jury was not persuaded by the plaintiffs' testimony and found instead for the defendants on all counts. The evidence and arguments advanced by the defense were more than sufficient to support the jury's verdict in all respects.

Pursuant to Rule 50, a jury's verdict must stand unless the movants demonstrate that no rational jury could have rendered the verdict it did. *Thomas v. Cook County Sheriff's Dep't,* 588 F.3d 445, 451 (7th Cir. 2009). This is especially true in cases in which the outcome depends upon the resolution of relatively simple issues from highly disputed factual testimony. *Williams v. City of Valdosta*, 689 F.2d 964, 974 (11th Cir. 1982). The determination of the credibility and weight to be attached to the testimony as well as the reasonable inferences to be drawn therefrom is the jury's basic function. *U.S. v. Mitchell,* 319 F.2d 402, 404 (7th Cir. 1963). The jury's determination in this regard is not to be overturned absent exceptional circumstances. *U.S. v. Johnson,* 437 F.3d 665, 675 (7th Cir. 2006).

Viewed in the light most favorable to the defendants, the evidence established that John Dolan obtained a search warrant for the first floor and basement of the subject property. Both Dolan and Keith Karczewski testified that upon entering the building and while in the process of executing the warrant, they observed Anthony in the common stairwell near the landing located between the

first and second floors holding a clear plastic bag of what appeared to be cannabis. Upon seeing the officers, Anthony fled up the stairs and into the second floor apartment. Karczewski and Dolan pursued him into the second floor apartment where he was found attempting to conceal the bag of cannabis. He was handcuffed, arrested for possession of cannabis and searched for weapons. Karczewski and Dolan conducted a brief protective sweep of the second floor apartment for their safety and the safety of the officers in the apartment below. Both Karczewski and Dolan testified that there were no other occupants found in the second floor apartment and that they were in the apartment for only three to five minutes. The only other occupants, including plaintiffs Graham, Suleaner and Jermaine, were all found in the first floor apartment at the time the officers initially entered the subject property. This testimony, of course, is contradicted by the defendants in almost every way possible. It was for the jury to determine who was telling the truth.

Plaintiffs argue that the circumstances surrounding Anthony's arrest for possession of cannabis did not establish exigent circumstances as the crime charged was only a misdemeanor. In support of their argument, Plaintiffs cite *Reardon v. Wroan,* 811 F.2d 1025, 1028 (7th Cir. 1987), and *Welsh v. Wisconsin,* 466 U.S. 740, 753 (1984). However, as defendants point out, in neither of these cases does the Court say that "minor" equals "misdemeanor." It is the penalty that may attach to a particular offense which provides the clearest indication of the State's interest in arresting an individual suspected of committing an offense. The penalty for the offense of possession of cannabis, of course, depends on the weight of the cannabis. The officers could not possibly have known the weight of the suspect cannabis in Anthony's possession at the time he was first observed in the stairwell fleeing into the second floor apartment. However, the officers could reasonably have expected to find a large amount of drugs on the premises of the first floor apartment based upon the

information they had gathered prior to obtaining and executing the warrant – the information in the search warrant affidavit as well as their observations and the observations of their confidential informant. Thus, the officers had a reasonable basis to conclude that the amount of drugs in possession of an occupant traveling between the only two units in the building was not a trivial amount. This is a determination that these officers were forced to make in a fraction of a second and without warning. Once inside the apartment, the plaintiff could easily have destroyed the evidence of his crime. A conclusion that the officers reasonably believed a serious crime was afoot is well supported by the evidence in this case. The officers further testified that they conducted only a cursory protective search of the second floor apartment to determine if there were any other occupants who could threaten them in the apartment or any other contraband or weapons in the area where Anthony was arrested. The officers' testimony, if found credible, was more than sufficient to sustain the jury's verdict. The Court's instructions in this regard adequately instructed the jury as to the elements which would authorize an exigent circumstances warrantless entry and the permissible scope of any subsequent search.

Plaintiffs also contend that defendants failed to rebut the presumption that a warrantless entry and search of a home is unconstitutional. But the presumption that a warrantless search is unconstitutional does not serve to place on the defendants the burden of proving that search was constitutional. Rather, the presumption merely imposes on the defendants the burden of going forward with evidence to rebut the presumption. *See Valance v. Wisel,* 110 F.3d 1269, 1279 (7th Cir. 1997). These defendants accomplished that when they presented evidence to establish exigent circumstances for the entry and search. *Id.*

Plaintiffs also assert that their detention was unconstitutional and that, even if initially justified, the manner and scope of their detention was unreasonable. Plaintiffs' arguments are mainly based upon the conclusion that the jury believed their testimony, to wit, that defendants broke down the door to the second floor apartment, cuffed all the occupants, forced them to go down to the first floor apartment and detained them for one-and-a-half to two hours, while the home was being ransacked, the door, the ceiling, and other items were being damaged, and sums of money were seized. From the verdict, it is obvious that the jury found this testimony not credible. Defendants, on the other hand, testified that Graham, Suleaner and Jermaine were in the first floor apartment at the time they made their initial entry into the first floor apartment pursuant to the search warrant. Taking the testimony in the light most favorable to defendants, defendants were executing a valid search warrant at the time they entered the first floor apartment and thus had authority to detain the occupants of the first floor apartment (Graham, Suleaner and Jermaine) while a proper search was conducted. *See* Michigan v. Summers, 452 U.S. 692, 704-05 (1981); Muehler v. Mena, 544 U.S. 93, 98 (2005); U.S. v. Jennings, 544 F.3d 815 (7th Cir. 2008). The search of the first floor apartment lasted approximately one-and-a-half to two hours. All of the plaintiffs were detained at a table in the middle of the apartment during that time. There is nothing unreasonable about these detentions. The jury so found, and the Court sees no basis for disturbing that finding.

Plaintiffs argue that the Court should have taken judicial notice that the underlying criminal proceeding against Anthony was terminated in his favor. In order to establish a malicious prosecution action, the plaintiff must allege facts showing the termination of the proceeding in favor of the plaintiff. In *Swick v. Liautaud*, 169 Ill.2d 504, 513-14 (1996), the Court stressed that it

was the circumstances surrounding the entry of the nolle prosequi that must be examined and not the mere form or title of the disposition. The Court has denied this motion both before and after the close of the evidence. As with almost everything else in this case, the facts and circumstances surrounding the termination of Anthony's criminal case were the subject of conflicting testimony and evidence. It was up to the jury to determine the true facts and circumstances and whether these circumstances justified a conclusion that the case was dismissed in a manner favorable to the plaintiff. Furthermore, plaintiffs also failed to establish the other elements of a malicious prosecution case.

Plaintiffs complain that the admission of evidence and testimony regarding the search warrant and affidavit was prejudicial and confused the jury. But it was the plaintiffs who chose to contest the legitimacy of the search warrant and every aspect of defendants' conduct at trial. In response, the defendants were permitted to present their own evidence to dispute the plaintiffs' claims. The introduction of the search warrant and affidavit were particularly relevant and appropriate given the plaintiffs' assertions in their opening statement and at trial that the defendants were members of a "rogue search team" that "played by their own rules" and raided the second floor apartment of the subject property "for no reason." Plaintiffs strongly attacked the reliability of the confidential informant and the defendants' reasonableness in relying upon the informant's declaration in obtaining a search warrant. Plaintiffs also argued that there was no corroboration for the information in the application for the search warrant and sharply cross examined Dolan as to the reliability of the informant. Defendants had a right to rebut plaintiffs' assertions. Defendants also had a right, in view of the sweeping accusation that they were rogue cops who did not play by any rules, to establish that they did actually meticulously follow the rules that govern their right to be present in the building at the time they observed the plaintiff, Anthony Sipp, on the landing in

possession of an illegal drug. Nor could the search warrant or the supporting affidavit have misled the jury into believing that the warrant for the first floor and basement apartments justified the police entry into the second floor apartment. Such an argument was never made to the jury. The defendants' only argument in regards to their entry into the second floor apartment was that there was a warrantless entry based upon exigent circumstances and the jury was instructed on when such an entry is allowed. Finally, the totality of the officers' knowledge at the time of their entry into the building, pursuit of Anthony into the second floor apartment, and detention of the plaintiffs in the first floor apartment, was relevant, if not essential to establish the reasonableness of their actions at each such stage. The information in the search warrant affidavit that Officer Dolan prepared is relevant in this respect as well.

In addition, because the plaintiffs' presentation of what occurred during the execution of the search warrant was so drastically different from what the defendants claim actually happened, both parties were entitled to the opportunity to present their version of the events as completely as possible. The evidence defendants presented was relevant and appropriate to rebut issues raised by the plaintiffs. Similarly, the testimony as to the ammunition found pursuant to the search was relevant to rebut plaintiffs' assertion that the manner and scope of their detention was unreasonable. The ammunition that was found was for use in three different types of handguns. This evidence was appropriately presented to the jury so as to allow the jury to make a determination regarding the reasonableness of the defendants' determination to detain plaintiffs together in one place during the search.

The cross examination of Anthony and Jermaine regarding their past use of a false address

was probative of their truthfulness as witnesses pursuant to Federal Rule of Evidence 608(b). This testimony was especially appropriate in a case which rested upon a determination of the credibility of the witnesses. Furthermore, the Court restricted the manner in which the questioning was done so as to eliminate any likelihood that the testimony would somehow unfairly prejudice the plaintiffs. Plaintiffs argue that the jury could only have concluded that the prior false statements came as a result of prior arrests. But, absent evidence, such an inference would call for speculation and there is no reason to believe the jury engaged in speculation. On the contrary, the jury was instructed that any inferences had to be reasonable and had to be based on the evidence. The jury is presumed to follow the Court's instructions on the law and there is no basis whatsoever for believing the jury did not do so in this case.

Plaintiffs argue that Dolan's testimony regarding Anthony's incriminating post arrest statements should have been barred as well. As defendants point out, it is not entirely clear which particular statements are objected to, as the plaintiffs fail to cite to specific testimony and, not all of the statements were objected to even during the pretrial hearing. The Court reviewed each of the statements complained of at the pretrial hearing and ruled on each individually taking into consideration relevance, probative value and the possibility of any undue prejudice. All such pretrial rulings are, of course, provisional. However, nothing during the course of the trial changed the court's pretrial determination as to these statements. Plaintiffs' contention that the statements were inadmissible because they were Dolan's fabrications, is, of course, an issue for the jury to determine. Dolan's testimony was that the statements were not a fabrication, but actually made by the defendant. Defendants were free to impeach Dolan on his prior inconsistencies with regard to such statements and to argue to the jury that the statements were never made. As with almost every fact in this case,

the jury was faced with starkly contrasting testimony and contentions. It was for the jury to determine who to believe. The Court sees no basis in the record for disturbing the jury's determinations.

Evidence admitted at trial regarding the forfeiture $1,348.00 seized from Anthony Sipp was relevant and appropriate to rebut plaintiffs' conversion allegations. In addition, in light of the plaintiffs' testimony and arguments that the defendants were rogue cops operating outside the rules of law, defendants were properly allowed to present evidence tending to show that the disposition of the seized funds was strictly according to legal process.

For the foregoing reasons, plaintiffs' motions under Rule 50(b) and Rule 59(a) are denied.

April 5, 2012

**SO ORDERED**                                    **ENTER: April 5, 2012**

--------------------------------------------

**RONALD A. GUZMAN**
**District Judge**